### HENRY POPE v. W. B. POPE ET ALS.

(Filed 23 October, 1918.)

1. **Appeal and Error—Objections and Exceptions—"Broadside"—Exceptions.**
    Where objectionable and unobjectionable evidence is covered by only one exception, the exception, on appeal, will not be confined to that which is objectionable, or considered.

2. **Evidence—Deceased Persons—Transactions or Communications—Statutes —Restricted Testimony.**
    Where a person claiming title to lands in controversy through or under a deceased person has testified to a transaction or communication with him relating to the lands, the adversary party is restricted in his testimony to evidence concerning the same matter. Revisal, sec. 1631.

3. **Same—Limitation of Actions—Parol Trusts—Trusts and Trustees.**
    The plaintiff, having acquired a deed conveying the fee-simple title to the lands in controversy, may not testify to a transaction with his de-

ceased grantor, whereby he claims that a parol trust was engrafted on his title in favor of another for life, and thus bar the defense of adverse possession set up by the defendant in the possession of the lands, when the defendant has not opened up this matter by his testimony; for the same is a transaction with the deceased person, within the intent of Revisal, sec. 1631.

4. **Ejectment— Title— Burden of Proof— Issues— Answers— Instructions— Appeal and Error—Harmless Error.**

In ejectment, the plaintiff must recover on the strength of his own title, and not on the weakness of that of the defendant; and where, in his action to recover lands, the jury, by their answer to appropriate issues, under legal evidence and a correct charge, have found that the plaintiff's deed was procured by fraud, and therefore invalid to pass the title, thus defeating plaintiff's recovery, the charge on the other issues, raising only the question of defendant's title by adverse possession, etc., becomes immaterial.

ACTION tried before *Devin, J.,* and a jury, at March Term, 1918, of CUMBERLAND.

Plaintiff sued for the recovery of several tracts of land described in his complaint, and specially relied on a deed of W. B. Pope and wife to him, dated 12 December, 1881. The defendants claimed under W. B. Pope and wife and attacked their deed to the plaintiff upon the ground of duress and fraud, and in support of their allegations they alleged, and introduced evidence tending to show, that at the time the deed was executed on 12 December, 1881, plaintiff held a mortgage on the property for $400, which had been reduced to $300, establishing the relation of mortgagor and mortgagee between the parties, and that there was really no consideration for the deed, though one was recited in it, and that it was not fairly obtained from the grantors by the plaintiff, but, on the contrary, was procured by duress and fraud, W. B. Pope having been plied with whiskey by the plaintiff and being at the time in a state of intoxication from the use of it, and besides, that while in that condition, he was threatened and cajoled and deceived by the plaintiff into executing the deed.

Defendants also alleged that they had been in the possession of the land since the deed was made, and for more than seven years, holding and claiming the same in their own right and notoriously, continuously and adversely for that length of time.

Plaintiff replied and alleged that the possession of defendants was held in subordination to their right and title, and not adversely, up to the time when Mrs. W. B. Pope, who survived her husband, died, which occurred within a year or two before this action was commenced. That when the deed of 12 December, 1881, was executed, a life estate was expressly reserved by parol to Mrs. W. B. Pope, and that she, therefore, held possession under this reservation, not against the plaintiff, but by

his express oral permission, and, therefore, the statute of . limitations had not run so as to defeat his title or bar his right of possession.

Mrs. L. B. Raynor, in her own behalf and as a witness for the other defendants, was permitted to testify over plaintiff's objection to certain transactions or communications between plaintiff and her father, W. B. Pope, at the time or just before the deed was executed, tending to show duress and a want of consideration for the deed, and plaintiff, in his own behalf, proposed to testify that the consideration recited in the deed was made up of a cash payment of $150, two notes, one of which was for $200, and the other for $300, the amount of the mortgage ($400), which was canceled, and the payment of a mortgage on the land to Lewis Tew of $150, and that the two notes given by him to W. B. Pope were paid when they matured.

In regard to this testimony, the record states: "W. B. Pope came to see me about selling the land, and offered to sell it to me for $1,150, and I bought it from him at that price. I went over to W. B. Pope's house with I. W. Godwin, justice of the peace, in accordance with agreement with W. B. Pope, and the deed was prepared and signed. I paid him $100 cash and gave him two notes, one for $200, due sixty days after date, and one for $300, due the following fall, and receipted for the $400 mortgage which I had against W. B. Pope, and agreed in addition to take up a mortgage of approximately $150 which Lewis Tew held against W. B. Pope, and I paid the notes which I gave him when they were due and paid the Tew mortgage."

The foregoing testimony by Henry Pope was objected to by the defendants, the objection was sustained, the court restricting plaintiff's testimony as to personal transactions with W. B. Pope, deceased, to those concerning which defendants had offered evidence, and plaintiff excepted. The same may be said as to the testimony of another of the defendants, Troy L. Pope, so that the two exceptions will be considered together as they involve the same question. There are some other exceptions, which will be noticed hereafter.

The jury returned the following verdict:

1. Was the conveyance of the land described in the complaint by deed from W. B. Pope and wife to Henry Pope, dated 12 December, 1881, without oppression to said W. B. Pope, and for a fair consideration? Answer: "No."

2. What consideration, if any, was paid for the conveyance of said land? Answer: "None."

3. Was the said deed from W. B. Pope and wife to Henry Pope procured by fraud and undue influence? Answer: "Yes."

4. Was the mortgage debt due plaintiff fully paid? Answer: "Yes."

5. After the execution of 12 December, 1881, did W. B. Pope and

wife remain in possession of said land and hold adversely to the plaintiff up to the death of Mrs. Susan Pope? Answer: "Yes."

6. Has plaintiff been in possession of said land within twenty years before the commencement of this action? Answer: "No."

7. Has W. B. Pope been in possession of the 93-acre tract of land under known and visible lines and boundaries and colorable title for seven years before the commencement of this action? Answer: "Yes."

8. Is the plaintiff the owner and entitled to the possession of any part of the land described in this complaint, and if so, what part? Answer: "None."

9. Are the defendants, or any of them, in the wrongful possession of any part of the said land? Answer: "No."

10. What damages, if any, is plaintiff entitled to recover therefor? Answer: "None."

Judgment was entered upon the verdict, and plaintiff appealed.

*Sinclair & Dye, Rose & Rose, E. F. Young, and N. A. Townsend for plaintiff.*

*C. W. Broadfoot, John G. Shaw, and J. C. Clifford for defendants.*

WALKER, J., after stating the case: There is one fatal defect in the objection of the plaintiff to the testimony of Mrs. L. B. Raynor and Troy L. Pope. It was taken "to all of the foregoing testimony"—that is, to the same as a mass, and not to the separate parts thereof. Some of the testimony is plainly competent, and even if the other part is not so, the objection fails, as it did not point out the incompetent testimony or separate it from the competent testimony, and assign error only as to it. *R. R. v. Mfg. Co.,* 169 N. C., 165, 169; *S. v. Ledford,* 133 N. C., 722; *Bank v. Chase,* 15 N. C., 108; *S. v. Stewart,* 156 N. C., 636; *Ricks v. Woodard,* 159 N. C., 647; *Quelch v. Futch,* 175 N. C., 694.

There is some of this testimony which did not disclose any transaction or communication between the witness and the deceased party, and for the most part it refers to what the plaintiff himself said or did, and he has had full opportunity in this respect to reply and give his version of the particular transaction.

As to the other objection, the court was clearly right in confining the testimony of the plaintiff to those transactions or communications as to which the other witnesses had testified. As shown in *Bunn v. Todd,* 107 N. C., 266, recently quoted with approval in *Irvin v. R. R.,* 164 N. C., 6, at p. 15, the exception is this: "When the representative of, or person claiming through or under the deceased person or lunatic is examined in his own behalf, or the testimony of the deceased person or lunatic is given in evidence concerning the *same transaction,*" citing

*Burnett v. Savage,* 92 N. C., 10; *Sumner v. Candler,* 92 N. C., 634. We see, therefore, that the testimony of the other party, in reply, must be restricted to the same transaction which was the subject-matter of the principal testimony, or that of the other party, and the court, as we construe the record, so confined the plaintiff's testimony, and consequently did not deny him any right to which he was entitled. The object of this wholesome statute (Revisal, 1631; Code, 590; C. C. P., 343) is well set forth in *McCanless v. Reynolds,* 74 N. C., 314, as follows: "Allowing a party to an action to give evidence in his own behalf is a wide departure from the rules of evidence at common law, and the proviso in section 343, which fixes a limit to this departure, should be construed liberally. The effect of it is to exclude one of the parties to a transaction, who is afterwards a party to an action concerning the right or property involved in the transaction, from the enabling clause of the statute, in the event of the death of the other party to the transaction. The proviso rests on the ground not merely that the dead man cannot have a fair showing, but upon the broader and more practical ground that the other party to the action has no chance, even by the oath of a relevant witness, to reply to the oath of the party to the action, if he be allowed to testify. The principle is, unless both parties to a transaction can be heard on oath, a party to an action is not a competent witness in regard to the transaction."

This rule of exclusion, if left absolute in form, might in certain cases, it was thought, work unequally, and therefore the exception was inserted to make it fair and just in its operation. There is nothing inequitable in requiring that the opposing testimony to that given in evidence by the other side should be limited to the same transaction or communication. It could not be otherwise without opening the door much wider than the necessity of the particular case justified.

The court was right in excluding the testimony of the plaintiff as to the tenancy of W. B. Pope and his wife and as to the parol agreement that Mrs. Pope should have a life estate. This involved necessarily a direct transaction or communication between plaintiff and Mrs. Pope, who is dead, and comes within the inhibition of Revisal, sec. 1631. *Harrell v. Hagan,* 150 N. C., 242, and cases cited, and *Boney v. Boney,* 161 N. C., 614, where the parties are reversed, but the point decided is substantially the same as the one now being discussed.

As to *Cheatham v. Bobbitt,* 118 N. C., 343, which was cited by the plaintiff's counsel, it is not applicable, because there the witness spoke of a certain transactions, including the whole of it, and the court correctly permitted the other party to testify to the same extent in contradiction of his testimony. In this case, some of the proposed testimony related to matters clearly outside of or foreign to the particular

transaction or communication to which the two witnesses had testified, and the court therefore properly closed the door to it.

Abstractly considered, that part of the charge concerning the legal effect of a parol conveyance of the land, or rather and more correctly, of the oral lease of it to Mrs. Pope for her life—if evidence of it had been competent and the first four issues had not been answered as they were—would have been erroneous; and so would the other instruction, in regard to adverse possession, in which the word "adverse," or any equivalent expression, was omitted whereby the bare possession, if continued for seven years, was made sufficient as a bar to plaintiff's recovery. This omission evidently was an inadvertence. But these are not concrete questions, as the plaintiff's case was cut up by the roots when the jury answered the first four issues, for these issues mean that plaintiff obtained the deed of 12 December, 1881, by fraud and undue influence, and there was ample evidence to support the findings. If he did not own the land, it can make no difference whether the possession was adverse or not.

In ejectment, the plaintiff must recover on the strength of his own title, and not on the weakness of that of his adversary (*Bettis v. Avery,* 140 N. C., 184; *Rumbough v. Sackett,* 141 N. C., 495); it must be good against the world or good against the defendant by estoppel. *Mobley v. Griffin,* 104 N. C., 112; *Campbell v. Everhart,* 139 N. C., 503. It can make no difference whether defendant has the title or not, the sole inquiry being whether plaintiff, upon whom rests the burden, has it. If he fails to show that he has the title and right of possession, it does not concern him what right or title the defendant has, if any, or whether he has any at all. In this case, the foundation upon which rested the plaintiff's right to recover has been destroyed by the verdict upon the first four issues.

What we have just said regarding the instruction as to adverse possession applies equally to the exception relating to the parol conveyance or lease of the land or parol lease to occupy it during Mrs. Pope's life. It may not have passed title to her, as said by the court, but if not, it may have been evidence of the nature of her possession, as it tended to show, if true, that she was let into possession by the plaintiff. and being in under him or by his permission, it could not be adverse, just like the case of a tenant who holds under and not against his landlord. But this is not a practical question, as plaintiff, under the verdict on the first four issues, had no title to be barred by adverse possession. The other questions would have become material only if he had won as to these four issues. The other exceptions are either covered by what precedes or they are so manifestly untenable as to require no separate discussion.

We are of the opinion that there was no error committed in the trial of the case.